J. SHARPLESS WORTH *et al.*, Appellants, v. MICHAEL E. HERBERT, Respondent.

Kansas City Court of Appeals, December 3, 1894.

1. **Trial Practice:** DEMURRER TO EVIDENCE: CONTRACT. Plaintiffs agreed to furnish defendant certain goods at certain prices free on board at St. Joseph as ordered by defendant during a period of six months and also to do certain flanging. *Held*, this imposed a respective duty on defendant of sending in orders within that time and to accept and pay for the material so ordered. *Held, further*, that the evidence tended to show compliance with the contract on plaintiffs' part and a failure to comply on defendant's part and the case was erroneously taken from the jury.

2. **Construction:** CONTRACT: COMPLAINT. Though the parties differed as to plaintiffs' right to ship by water and rail, yet, as plaintiffs conceded defendant's contention and offered to ship the remainder by rail alone, there was no just reason for abandoning the contract on defendant's part.

3. ———: ———. Under the contract in controversy, it is *held* that plaintiffs were only bound to furnish certain steel plate, and flange the same where it could be done by his new flanging machine, and were not bound to flange flue holes in boiler heads on the plan submitted by the defendant.

4. ———: ———. Contracts are read and construed in the light of circumstances, and, if doubtful language is used in a contract, its construction may be evolved by consideration of the business relations of the parties.

*Appeal from the Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

REVERSED AND REMANDED.

*Reed & James* for appellants.

(1) "If rescission be relied upon as a defense to a contract, it must be specially pleaded. Proof of the fact will not be admitted under a pleading which only denies the making of the contract and avers a breach of it." *Riggins v. Railroad,* 73 Mo. 598, 607; *Brown v. Welden,* 27 Mo. App. 251, 260. (2) There was substantial evidence on all points necessary to a recovery by plaintiffs, and the case should have been submitted to the jury. *Baum v. Fryear,* 85 Mo. 151; *Groll v. Tower,* 85 Mo. 249, 251; *Damhorst v. Railroad,* 32 Mo. App. 350, 356; *Culverhouse v. Worts,* 32 Mo. App. 419, 426; *Moody v. Deutsch,* 85 Mo. 237, 243; *Covey v. Railroad,* 86 Mo. 635, 542. Unless this court holds that the contract required plaintiffs to manufacture boiler heads—make flue holes and flange flue holes—for defendant's peculiar "magazine boilers," plaintiffs contend the case should be reversed.

No brief for respondent.

GILL, J.—During the year 1891, the defendant was engaged in the manufacture of steel boilers, etc., at St. Joseph, Missouri, and at the same time the plaintiffs, under the firm name of Coatesville Rolling

Mill Company, were operating rolling mills for the manufacture of steel plate at Coatesville, Pennsylvania, In March of that year plaintiffs and defendant entered into the following written contract:

"March 17, 1891.

"We, the Coatesville Rolling Mill Company, of Coatesville, Penn., have this day sold to M. E. Herbert, St. Joseph, Mo., the following: Forty (40) tons of tank steel at two dollars and thirty-nine cents ($2.39) per hundred pounds; forty (40) tons of sheet steel at two dollars and sixty-four cents ($2.64) per hundred pounds; and twenty (20) tons of flange steel at three dollars and four cents ($3.04) per hundred pounds, all delivered f. o. b. cars St. Joseph, Mo.

"The above is to be shipped to the said M. E. Herbert as he needs it, in assorted sizes as per his orders, and in any thickness from and including three sixteenths of an inch (3-16) and over-sizes to be within our easy capacity. All sheets or plates to be of standard gauge. M. E. Herbert can place his orders for the above as he needs the steel at any time or times within six months from this date. The terms upon which the above steel is sold, are ninety (90) days from the date of the bill and bill of lading. (We will give him twenty-five per cent. (25 per cent.) from the standard list for flanging. Flanging to be conditional upon the successful working of our new flanging machine.)

"Permission is given to M. E. Herbert to increase the above order twenty-five tons if done by April 1st, 1891. If ordered in less than carload lots, M. E. Herbert is to pay the difference in freight.

"Very truly yours,

"M. G. WORTH,

"Accepted,                For the Coatesville R. M. Co.

"M. E. Herbert."

On the twentieth day of March following the making of the above contract, the defendant ordered a portion of the above material. The same was shipped in April, and after some delay (because conveyed in part by water transportation) was received by defendant without objection and in due time paid for.

On June 23, 1891, defendant sent a further order, requesting the shipment of certain "material as soon as possible *via* fast freight." This latter order contained certain heads of three-eighth tank steel, with "flue holes flanged in the center opposite. The above heads are for my magazine boilers, and the flue holes flanged in the center should be made according to the enclosed sketch." In the latter order, defendant sent, to quote plaintiff's testimony, "one specification which contained heads with flue hole flanges, which our contract with him did not call for."

In answer to this order, plaintiffs, by letter, advised the defendant that they were not prepared for that kind of work (to wit, the construction of the flue holes in the center of the boiler heads); that they could do the outside flanging (which they admitted was covered by their contract), but offered, for and in behalf of defendant, to get the work done by a firm at Dayton, Ohio, the steel plates to be sent on there by plaintiffs and thence to be reshipped to defendant at St. Joseph. This was followed by a correspondence between the parties as to the amount of this extra cost, etc., concluding with a letter from defendant to plaintiffs, of date July 24, 1891, in which defendant directed the plaintiff to cancel the balance of his order.

Plaintiffs then and thereafter offered to proceed with furnishing the steelwork called for by the contract, requested defendant to send in his orders with specifications, but defendant declined to make further orders and treated said contract as at an end. Thereupon

plaintiffs brought this action for the damages sustained by reason of defendant's failure and refusal to carry out the contract. The evidence tended to prove that the price of steel declined after the execution of the contract in March, and that plaintiffs lost by reason of defendant's failure to order material in accordance with its terms.

At the conclusion of the evidence tending to prove the above facts, the trial court instructed the jury to return a verdict for defendant, which was done, and from a judgment thereon plaintiffs appealed.

I. In our opinion, the court erroneously took this case from the jury. The evidence tended to establish a right of recovery in the plaintiffs. The written contract between the parties, properly construed, obliged the plaintiffs, at certain prices, to furnish f. o. b. (that is, free on board cars), at St. Joseph one hundred tons steel plate for use in defendant's boiler manufactory, and which was to be ordered as defendant desired during the succeeding six months. Plaintiffs also agreed to do such *flanging* of the steel thus furnished as the defendant might desire at twenty-five per cent. off the usual standard price for such work, provided its flanging machine worked successfully. The contract imposed the reciprocal duty on defendant of sending in his orders within the six months, and to accept and pay for the materials in accordance with the terms of the contract.

Now, if plaintiffs have complied or tendered compliance with the terms of the contract, and defendant has failed or refused so to do on his part, then clearly plaintiffs have a cause of action. Two orders, comprising a portion only of the materials, were made by the defendant, one in March and the other in June. The first was shipped and received by defendant without objection, on board the cars at St. Joseph, and paid

for. It is true that, subsequent to the reception of the first order, the defendant complained that plaintiffs shipped the steel by *water and rail*, thereby causing some delay, and asked the plaintiffs thereafter to ship by rail alone. Plaintiffs, while claiming the right to ship by either method, yet conceded defendant's contention and offered to ship the remainder by rail alone. So, then, on that account, there was no just or legal reason for abandoning the contract on defendant's part.

In the second order made by defendant in June, 1891, plaintiffs were required to construct the *flue holes* in the center of a large number of boiler heads then ordered, a plan for such boiler heads then being sent on with the order. The failure or refusal of the plaintiffs to manufacture these boiler heads according to the defendant's plan seems to have furnished the defendant a reason for abandoning the contract made by him with the plaintiffs.

As to this, we think it clear that, under the terms of the written contract, plaintiffs were not bound to do this work. They were obligated only to furnish certain steel plate and *flange* the same where it could be done by their "new flanging machine." They were no more bound to cut out the center of the plates and insert there the flue holes than they were to proceed and complete the entire shell of the boiler. Contracts are read and construed in the light of circumstances. Defendant was a boiler manufacturer, while plaintiffs operated rolling mills. The business of the latter was to roll out the raw material into plates or sheets of uniform thickness, etc., while the former took these and constructed steam boilers. So, then, if doubtful language had been used in the contract, construction of its terms might be made, or the intention of the parties might be evolved, by a consideration of such business relations. But we do not think the contract on its

face, regardless of these circumstances, warranted the defendant in calling upon plaintiffs to manufacture the boiler heads.

This being so, then defendant was in default, and not the plaintiffs. The evidence tends to prove that defendant, without any legal excuse, abandoned the contract and refused to comply with its terms. And if this is so found, then plaintiffs should recover. The trial court erred in sustaining a demurrer to the evidence.

The judgment will be reversed and cause remanded. All concur.